**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**UNITED STATES OF AMERICA**                                                                           **PLAINTIFF**

**V.**                           **CAUSE NO. 3:18-CR-67-CWR-LGI-2**

**AUBREY MAURICE JORDAN,**                                             **DEFENDANTS**
**MONROE L. HUGHES, III a/k/a Roe and
CORTEZ LAKEITH BYRD a/k/a Byrd**

**ORDER**

Before the Court are three motions filed by Defendant Monroe L. Hughes, III: (1) his Motion to Suppress [Docket No. 208]; (2) a Motion to Join in a Co-Defendant's Motion to Dismiss [Docket No. 209]; and (3) a Motion for Bond [Docket No. 240]. After due consideration of the motions and their responses, the Court is prepared to rule.

**I.**     **Factual and Procedural History**

Hughes has been in custody since April 4, 2018. Docket No. 10. On April 5, 2018, Hughes was arraigned before U.S. Magistrate Judge Linda R. Anderson, along with co-defendant Cortez Byrd, and entered a plea of not guilty to drug charges. Docket No. 1. On April 10, 2018, Judge Anderson found that Hughes should remain detained, as he failed to introduce sufficient evidence to rebut the presumption in favor of his detention pursuant to 18 U.S.C. § 3142(e)(3). Docket No. 40. In June 2018, this Court denied a motion to dismiss and motion for bond filed by Hughes.

Shortly thereafter, Hughes was charged via a superseding indictment with offenses related to the shooting and death of A.F. Prosecutors alleged that A.F. was murdered in retaliation for providing a law enforcement officer information relating to the commission or possible commission of a federal offense by Hughes. Docket No. 52. The Government charged Hughes along with co-defendants Aubrey Maurice Jordan and Cortez Byrd. *Id.* On July 3, 2018, Hughes

1

entered a plea of not guilty to the new charges. Docket No. 73. On May 12, 2020, this Court again denied a motion to dismiss. Docket No. 197. The present motions followed later. Docket Nos. 208, 209, & 240.

Several interviews that law enforcement officials conducted with A.F. are the subject of Hughes' motion to suppress. A.F., who was serving as an informant in the underlying drug matter for which Hughes was initially indicted, was shot on March 10, 2018. A.F. succumbed to the injuries sustained during the shooting on May 27, 2018. *See* Docket No. 218. Hughes seeks to suppress all recordings, transcripts, and references to the interviews that took place between these two events. Docket No. 208 at 1.

Hughes claims that these interviews did not concern the underlying matter for which A.F. was serving as an informant, but rather concerned A.F.'s memory of being shot. *Id.* at 3. The Government contends that these interviews are important because they "cast additional light on the Defendants' intent to prevent and/or retaliate against [A.F.], specifically A.F.'s revelations about calls he received *prior to* being shot." Docket No. 218 at 11. Of these interviews, Hughes claims that in at least three, A.F.'s voice is inaudible and thus untrustworthy. Docket No. 208 at 1-2.

**II.     Motion to Suppress**

The Court first turns to Hughes' motion to suppress evidence relating to the interviews of A.F. taken between March 10, 2018 and May 26, 2018. Docket No. 208. For the reasons that follow, this Court denies his motion to suppress in part, while reserving judgment concerning the trustworthiness of the recordings in question until a pretrial hearing can be held on the matter.

2

### A. Whether A.F.'s Statements Are Testimonial

At the heart of our Constitution's protections for criminal defendants is the right to confront one's accusers. This right is enshrined in the Confrontation Clause, which provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI.

The Confrontation Clause is primarily concerned with testimonial statements. *Crawford v. Washington*, 541 U.S. 36, 36 (2004). As such, this Court must first determine whether A.F.'s statements are testimonial, which in turn determines whether the Confrontation Clause applies. *Davis v. Washington*, 547 U.S. 813, 824 (2006).

The Supreme Court has articulated this standard for determining whether a statement is testimonial:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis*, 547 U.S. at 822 .

Because the statements at issue span over two months and were not taken amid an ongoing emergency in an effort to render police assistance, the primary purpose of gathering the statements was to establish or prove past events potentially relevant to later criminal prosecution. A.F.'s statements, therefore, are testimonial.

### B. *Giles* Exception (Forfeiture by Wrongdoing)

Next is the crux of the parties' dispute: Whether A.F.'s statements may be admitted under Federal Rule of Evidence 804(b)(6).

3

Rule 804(b)(6) provides that "[a] statement offered against a party that wrongfully caused—or acquiesced in wrongfully causing—the declarant's unavailability as a witness, and did so intending that result" is admissible. Fed. R. Evid. 804(b)(6). The rule has its roots in the common law, and stems from the maxim that "no one should be permitted to take advantage of his wrong." *See Giles v. California*, 554 U.S. at 353, 366 (2008) (citation omitted). In *Giles*, the Supreme Court clarified the level of intent required under this exception, holding that for a statement to be admitted, the defendant must have intended to make the witness unavailable. *Id.* at 367. To prove such intent, "[t]he party offering this evidence must make this showing by a preponderance of the evidence." *United States v. Gurrola*, 898 F.3d 524, 534 (5th Cir. 2018).

Upon review of the record, the Court concludes that the Government has met its burden.[1] It has put forward facts that establish that after the Defendants learned of A.F.'s identity, they conspired to kill him for the purpose of rendering him silent. The Government's references to statements made by A.F., A.F.'s girlfriend, and A.F.'s mother constitute sufficient evidence in this regard. *See* Docket No. 218 at 2-3.

Hughes argues that the "the holding in *Giles* [is] that unconfronted testimony can only be admitted under the 'Forfeiture Doctrine' regarding the underlying crime but not regarding the alleged shooting itself." Docket No. 221 at 4. But this argument is unpersuasive. *Giles* makes clear that the relevant inquiry in determining if the forfeiture exception applies is whether the "wrongdoer . . . [had] in mind the particular purpose of making the witness unavailable." *Gurrola*, 898 F.3d at 534 (quoting *Giles*, 544 U.S. at 367). So long as the party furnishing the evidence carries its burden to show the wrongdoer's intent, the forfeiture exception's applicability does not hinge on the distinction that Hughes advocates.

---

[1] Because this is a preliminary question about the admissibility of evidence, "the court is not bound by evidence rules, except those on privilege." Fed. R. Evid. 104(a).

4

For these reasons, Rule 804(b)(6) applies.[2] Thus, Hughes' motion is denied in part.

### C. Trustworthiness of the Recordings

The Court now turns to Hughes' claim that some of the recordings that memorialize his statements are inadmissible because they are not trustworthy. *See* Docket No. 221 at 4-5. There is no "formulistic standard to guide the admissibility of tapes and transcripts." *United States v. Greenfield*, 574 F.2d 305, 307 (5th Cir. 1978). "Tapes are not per se inadmissible because they are partially inaudible; the issue is whether the unintelligible portions are so substantial as to render the recording as a whole untrustworthy. This determination is left to the sound discretion of the trial judge." *Id.* (quotation marks and citation omitted).

One factor that the Fifth Circuit has taken into consideration when reviewing a lower court's ruling on the trustworthiness of a recording is whether the lower court held a "hearing on admissibility and the precautions taken by the trial court when the tape was played . . . ." *United States v. Ruppel*, 666 F.2d 261, 272 (5th Cir. 1982). The Government has acknowledged the Court's prerogative to hold such a hearing. As such, the Court will withhold its judgment on whether the recordings are sufficiently trustworthy until it has held a hearing on the matter.

## III. Motion to Join in Jordan's Motion to Dismiss

Next is Hughes' motion to join in co-defendant Aubrey Maurice Jordan's motion to dismiss Count VI. Docket No. 209.

For the purposes of considering this motion, the undersigned finds persuasive the general principle that when adopting reference to other parties' claims in filings before the Court, "[a] party has a duty to put its best foot forward . . . to spell out its arguments squarely and distinctly." *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990 (1st Cir. 1988); *see*

---

[2] Although the Court finds that Rule 804(b)(6) applies, this determination assumes that the evidence will be relevant as required by Rules of Evidence 104 and 401.

5

*also Rivera-Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir. 1988) ("Judges are not expected to be mindreaders."). This is an approach that district courts have adopted in criminal matters. *See, e.g., United States v. Galbraith*, No. CRIM.A. 11-262-KD, 2012 WL 2930979, at *2 (S.D. Ala. July 18, 2012); *Reynoso-Lucas v. United States*, No. 07-13905, 2009 WL 6312591, at *4 (E.D. Mich. June 4, 2009). The Fifth Circuit has similarly recognized—though in the context of post-conviction proceedings—that "an appellant may not adopt by reference fact-specific challenges . . . ." *United States v. Morgan*, 117 F.3d 849, 853 (5th Cir. 1997). Applying the principle to Hughes' motion, this Court finds the motion's cursory reference to Jordan's motion to dismiss—without arguing how or why the motion to dismiss is applicable to Jordan—fatal.

The Court denies Hughes' motion because it fails to specify how Jordan's arguments are transferable to Hughes. All the more significant in this regard is that this Court has already dismissed a prior motion to dismiss that Hughes made concerning Count VI as well as several other counts. *See* Docket No. 197.

### IV.  Motion for Bond

Finally, the Court takes up Hughes' motion for bond. Docket No. 240.

"When the district court acts on a motion to revoke or amend a magistrate's pretrial detention order, the district court acts *de novo* and must make an independent determination of the proper pretrial detention or conditions for release." *United States v. Rueben*, 974 F.2d 580, 585 (5th Cir. 1992) (citation omitted). "Reviewing a transcript of the detention hearing is an appropriate procedure to comply with that obligation." *United States v. Faulkner*, No. 3:09-CR-249-D2, 2010 WL 1541355, at *1 n.2 (N.D. Tex. Apr. 19, 2010); *see also United States v. York*, No. 4:09-CR-36, 2009 WL 1766798, at *1 (N.D. Miss. June 22, 2009). This Court has reviewed

6

the transcript of the detention hearing, the evidence submitted and the arguments of counsel made before the Magistrate Judge as well as the arguments presented in these filings.

"Section 3142(g) lists factors the judicial officer considers in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Rueben*, 974 F.2d at 586. These include:

1. the nature and circumstances of the offense charged, including whether the offense involves a narcotic drug;
2. the weight of the evidence against the person;
3. the history and characteristics of the person, including the person's character, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
4. the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

*Id.*; *see also* 18 U.S.C. § 3142(g).

To secure an order of detention, the Government has the burden to prove by clear and convincing evidence that "no condition or combination of conditions will reasonably assure" the safety of the community. 18 U.S.C. § 3142(f)(2)(B). It must also prove by a preponderance of the evidence that Hughes "poses a serious risk of flight." *United States v. McConnell*, 842 F.2d 105, 110 (5th Cir. 1988). Thus, the default position under § 3142 is that a criminal defendant should be released pending trial. However, that default is modified, for certain particularly dangerous defendants; namely, there is a presumption in favor of detention when probable cause exists that a defendant committed one of the crimes listed in § 3142(e)(3). *See* § 3142(e)(3).

The Court will first analyze Hughes' motion under § 3142, and then separately address his argument that his continued pretrial detention violates due process. Neither analysis justifies Hughes' pretrial release.

7

Due to the nature of the underlying charges that Hughes faces, as in the first instance in which he was considered for pretrial release, *see* Docket No. 40, there is a rebuttable presumption under § 3142(e)(3) that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community . . . ." 18 U.S.C. § 3142(e)(3).[3] Hughes responds that "[i]t is inconceivable that the Court cannot come up with a combination of conditions which would allow" for his release. Docket No. 240 at 3. However, Hughes misapprehends the standard. It is not for the Court to furnish such conditions; rather, it is the duty of the Court to assume that no such conditions will justify pretrial release unless Hughes can show otherwise. *See* § 3142(e)(3) ("Subject to the rebuttal by the *person* . . . .") (emphasis added). When called upon to offer evidence, counsel for Hughes announced, "Your Honor, we would rest without calling any witnesses. We do have argument." Docket No. 185 at 52.[4]

Here, Hughes has failed to rebut this presumption because he has failed to offer any evidence on the matter. To this extent, Hughes' discussion of the risk of COVID-19 is unpersuasive. While the enormity and seriousness of the hardships COVID-19 has imposed on the Hughes and his family are undoubtedly severe, they do not give leave to this Court to justify his release under § 3142.

Hughes then argues that his continued detention violates the Due Process Clause. In support of this argument, Hughes extensively cites the Fifth Circuit's holding in *United States v. Hare* and alludes to the factors established therein. 873 F.2d 796 (5th Cir. 1989).[5] Hughes is right that the

---

[3] Hughes remains charged with one or more offenses involving controlled substances for which there is a maximum term of imprisonment of 10 years or more as identified in 18 U.S.C. §3142(e)(3)(A), as was the case when Judge Anderson imposed detention. *See* Docket No. 40. Defendant is also currently being detained on arrest warrant for Complaint charging him with conspiring to kill and killing a person in retaliation for providing a law enforcement officer information relating to the the possible commission of a felony offense. *See* Docket Nos. 73, 74.
[4] The argument was neither convincing nor compelling. "[W]e're not talking about a great quantity of any illegal drugs, 50 grams of methamphetamine . . . ," counsel for Hughes urged, in part. Docket No. 185 at 54.
[5] The factors were articulated as follows:

length of pretrial detention *can* deprive a detainee of their constitutionally-protected due process, even in the context of regulatory detention such as that imposed by the Bail Reform Act. *Id.* at 801 (recognizing that "the due-process limit on the duration of preventive detention requires assessment on a case-by-case basis"). But, for the reasons explained below, Hughes misapplies this principle.

As Hughes recognizes, "[t]he question is not whether the court is responsible for delay but whether by action of the government the defendant has been deprived of his constitutional rights." *Id.* at 800. However, Hughes fails to point to any government action as the source of his delay, but instead points to COVID-19. Hughes' trial will begin as soon as feasibly possible in light of present COVID-related restrictions, and, as the Fifth Circuit has observed, a detainee's "detention is necessarily limited by the mandates of the Speedy Trial Act." *United States v. Stanford*, 394 F. App'x 72, 75 (5th Cir. 2010) (citing *United States v. Salerno*, 481 U.S. 739, 747 (1987)).[6] Moreover, there is no threat of the length of Hughes' detention running longer than any expected sentencing guidelines range, and thus no risk that the length of future detention would pose a due-process issue. *See Hare*, 873 F.2d at 801.[7]

---

In determining whether due process has been violated, a court must consider not only factors relevant in the initial detention decision, such as the seriousness of the charges, the strength of the government's proof that the defendant poses a risk of flight or a danger to the community, and the strength of the government's case on the merits, but also additional factors such as the length of the detention that has in fact occurred or may occur in the future, the non-speculative nature of future detention, the complexity of the case, and whether the strategy of one side or the other occasions the delay.

*Hare*, 873 F.2d at 801 (citations omitted).
[6] By Special Order, which has been extended multiple times, *see Special Order #12*, No. 3:40-MC-11, Docket No. 81, this Court has decided that due to the pandemic, "the period of the continuances for jury trials implemented by this Order are excluded under the Speedy Trial Act." *Special Order #11*, No. 3:40-MC-11, Docket No. 70 at 2 (citing 18 U.S.C. § 3161(h)(7)(A)).
[7] Hughes is being detained on charges which carry a maximum sentence of death. Docket No. 90.

9

Thus, Hughes' "continued detention serve[s] regulatory purposes and thus comport[s] with the Fifth Amendment's prohibition on punitive pretrial detention." *Id.* at 74.[8]

For the reasons stated above, this Court denies Hughes' motion for bond.

## V. Conclusion

For the foregoing reasons, Hughes' Motion to Suppress is denied in part and reserved in part. This Court orders a hearing to be held on the matter of whether the recordings at issue are trustworthy. Docket No. 208.

Hughes' motion to join Defendant Jordan's Motion to Dismiss is denied. Docket No. 209.

Finally, Hughes' Motion for Bond is denied. Docket No. 240.

**SO ORDERED**, this the 17th day of March, 2021.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE

---

[8] In reply, Hughes argues for the first time that he is "entitled to a hearing" under *Hare* because the Fifth Circuit in *Hare* had remanded. Docket No. 243 at 4. A hearing, however, is not mandated by the *Hare* factors. The remand to which Hughes alludes was simply the remedy required in order for the district court to implement the new standard announced in *Hare*. 873 F.2d at 797. The Fifth Circuit was not establishing a rule that a court must hold a hearing every time a party raises the *Hare* factors in the future. Rather, a court may decide the issue based on the filings and record before it. *See United States v. Hensler*, 18 F.3d 936, 1994 WL 83436, at *2 (5th Cir. 1994) ("[T]he district court has the discretion to conduct its de novo review by examining the pleadings and the evidence which was developed before the magistrate judge and then adopting the magistrate judge's pretrial detention order."); *see also United States v. Damond*, No. CR 20-174, 2020 WL 5261187, at *1 (W.D. La. Sept. 3, 2020) ("[T]he Court has significant discretion in deciding whether to hold an additional hearing or to review the evidence heard before the magistrate judge."). Rather, the Fifth Circuit has articulated the standard that a court must consider when ruling on a motion to reopen a detention hearing under 18 U.S.C. § 3142(f) as "whether any 'new' information was presented" to the court. *Stanford*, 367 F. App'x at 510 (5th Cir. 2010) (citation omitted). As discussed above, this Court concludes that no such information has been presented to it. The threat of COVID-19 is simply not relevant to the sort of information required under this standard to reopen a hearing on pretrial detention, as it offers no information about the movant's threat to the safety of the community or the risk of flight.