IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **PLAINTIFF** |
| **V.** | **CAUSE NO. 3:18-CR-67-CWR-LGI-2** |
| **MONROE L. HUGHES, III** | **DEFENDANT** |

### ORDER

Before the Court is Monroe L. Hughes, III's motion to reconsider bond. Docket No. 267. The Government opposes the motion. Docket No. 268. After a careful review of Hughes' prior detention hearings, the exhibits attached thereto, and the arguments of counsel, the motion is denied.

I.      **Factual and Procedural History**

In 2017, a federal grand jury returned a three-count indictment against Hughes and a co-defendant for conspiracy to possess and distribute 50 grams of methamphetamine, possession and distribution of the same, and aiding and abetting others to possess and distribute the same. Docket No. 2. On April 10, 2018, after a detention hearing before U.S. Magistrate Judge Linda R. Anderson, Hughes was ordered detained until trial. Judge Anderson noted that the charges gave rise to a presumption that no condition or combination of conditions would assure Hughes' appearance and the safety of the community. Docket No. 40. Judge Anderson also cited Hughes' prior criminal history, history of alcohol and substance abuse, and the lengthy sentence he would face on the current charges if convicted. *Id.*

On June 21, 2018, Hughes was again denied bond, this time by the undersigned. Docket No. 186.

On June 27, 2018, a federal grand jury returned a superseding indictment against Hughes and two co-defendants. The two additional charges lodged against Hughes included conspiring with co-defendants to kill a confidential informant for the purpose of preventing the informant's communications with law enforcement and as retaliation for providing information to law enforcement. One of Hughes' co-defendants is charged with the shooting itself. A.F., the informant, died from his gunshot wounds.

Hughes again requested bond, which was denied by the undersigned on March 17, 2021. Specifically, this Court held that concerns about COVID-19 were not a basis for relief. Docket No. 244.

In October 2021, the present motion for reconsideration followed. It requests a detention hearing and reasonable bond.

**II.     Legal Standard**

When determining whether there are conditions of release that will "reasonably assure the appearance of" a defendant "and the safety of any other person and the community," there are several factors the court should consider. *See* 18 U.S.C. § 3142(g). These include:

1. the nature and circumstances of the offense charged;
2. the weight of the evidence against the person;
3. the history and characteristics of the person, including the person's character, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
4. the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

*Id.*; *see also Rueben*, 974 F.2d at 586.

Certain offenses, enumerated in 18 U.S.C. § 3142(e)(3), give rise to a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of the community.

### III.    Discussion

This is not an 18 U.S.C. § 3145(b) motion, whereby a district court must review a Magistrate Judge's detention order *de novo* and "make an independent determination of the proper pretrial detention or conditions for release." *United States v. Rueben*, 974 F.2d 580, 585 (5th Cir. 1992) (citation omitted). This is Hughes' fourth request for bond. In addition to Judge Anderson, the undersigned has already considered (and reconsidered) whether bond was appropriate based on the relevant factors—once prior to the murder charges and again after. Accordingly, the Court does not find it necessary to rehash each of the 18 U.S.C. § 3142(g) factors in depth here. They are addressed below only if relevant.

First, this is a presumption case. The underlying offenses give rise to a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of Hughes and the safety of the community. This is not contested. *See* Docket No. 185 at 3 [hereinafter April 10, 2018, Tr.].

The primary support for Hughes' motion for reconsideration consists of 10 affidavits purporting to provide Hughes with an alibi for the shooting. *See* Docket No. 267, Exhibits B-K. The affidavits all claim that Hughes was hosting his mother's birthday party at the time of the shooting. Hughes also relies on a statement from Detective Brandon Fireplace. Docket No. 267, Exhibit A. In it, Det. Fireplace claims that a confidential informant told him that the man currently under arrest for shooting A.F. was not actually the shooter. *Id.* Rather, it was another man who remains at large. *See id.* There is no mention of Hughes. The affidavits and the "Fireplace memo,"

according to Hughes, show that the second factor, the weight of the evidence, "is not great." Docket No. 267 at 3.

But Hughes is not accused of being the shooter. His co-defendant, Aubrey Jordan, is. Thus, it is lost on this Court how affiants claiming that Hughes was at a party at the time of the shooting is probative. Indeed, Hughes' two charges related to the murder are both conspiracy charges: conspiring to kill and killing an informant with the intent to (i) prevent the communication to law enforcement and (ii) retaliate for providing information to law enforcement. Neither requires Hughes to be physically present at the murder nor pull the trigger. For example, Hughes' co-defendant Cortez Byrd is charged with the same conspiracies as Hughes, and Byrd was in federal custody at the time of the murder.

The weight of the evidence is not as thin as Hughes' motion suggests. The evidence against him consists of several recorded jailhouse calls leading up to the murder. At Hughes' first detention hearing, DEA Special Agent Kim Dearman testified about these calls. Based on a review of that testimony and the exhibits (transcripts of four recorded calls), there is substantial evidence against Hughes. He participated in two calls in what Agent Dearman described as an effort to uncover the identity of the informant. *See* April 10, 2018, Tr. at 53-54. Two days prior to the murder, Hughes promised to "handle everything on this end."  Docket No. 31, Exhibit G-2-A at 4. In another call, the day after the murder, Hughes' co-defendant and another man talk about shooting a Hi-Point pool stick at "the real neck of the ball." Docket Nos. 33 and 34, Exhibits G-3-A at 3 and G-3-B at 7. Detective Dearman testified that Hi-Point is a gun manufacturer and A.F. was shot in the neck. April 10, 2018, Tr. at 22-3. In that very call they suggest Hughes decided who would be the "champ," *i.e.*, the shooter. April 10, 2018, Tr. at 49. Hughes' repeated warnings to refrain from discussing criminal activity on jail-house calls was not well-heeded as his involvement is discussed

in each exhibit. In addition to these conversations, there are audio and video recordings of the drug transactions that were the basis for the initial indictment. Accordingly, factor two, the weight of the evidence *and* factor four, the nature and seriousness of the danger posed if Hughes were to be released, counsel against bond.

Separately, Hughes claims that he was employed as a bail bondsman and has no prior criminal record save a now-expunged possession charge. This, he claims, shows that factor three weighs in favor of granting bond. The pretrial services report, however, contradicts both statements and Hughes has not offered any explanation as to the discrepancies. By his own admission, Hughes has not worked as a bail bondsman since 2012—six years before his present arrest. And Hughes has two possession charges—only one of which has since been expunged. But Hughes is correct in that his criminal record is minimal. The Court also takes note of Hughes' family and community ties as discussed in his motion and others' affidavits. Still, after reviewing the evidence as a whole, Hughes' minimal criminal record, family and community ties, is not enough to overcome the presumption against him. Simply put, "[t]he mere production of evidence does not completely rebut the presumption." *United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992) (citing *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989)).

Hughes' instant charges involve narcotic drugs and "the risk of continued narcotics trafficking on bail"—alone—"constitute[s] a risk to the community." *Id.* That is not to mention the guns, which do not help. *See United States v. York*, 2009 WL 1766798, at 2-3 (N.D. Miss. June 22, 2009) (citing the defendant's possession of a gun as evidence that he was a "drug trafficker equipped with tools to carry out violent acts" despite having no convictions for selling drugs.). But of the utmost importance, Hughes is charged with engineering a murder. Indeed, the retaliatory murder of someone who had knowledge of Hughes' criminal wrongdoing. For this, he could be

5

facing the death penalty. Thus, the nature and circumstance of the offenses charged, the weight of the evidence, and the risk to the community outweigh his minimal lack of criminal history and ties.

Finally, Hughes claims that "[i]t is important to note" that two detectives involved in the murder investigation have since been indicted on federal theft and embezzlement charges. Docket No. 267 at 4. It "is patently unfair and unjust," Hughes claims, that they "remain free on bond while [he] has been incarcerated for more than three (3) years." *Id.* Hughes has failed to inform this Court as to why this information is "important," "unfair and unjust," or even relevant. Every case must be decided upon its unique facts. Whether the detectives were released on bond as to the charges brought against them has absolutely no bearing on whether Hughes should be released. Accordingly, this Court assigns this argument no weight.

As stressed by Hughes on multiple occasions, he has been incarcerated since April 3, 2018. Consistent with the preceding analysis, it is this Court's order that he remain incarcerated until trial. The motion is DENIED.

**SO ORDERED**, this the 14th day of December, 2021.

                                                      s/ Carlton W. Reeves
                                                     UNITED STATES DISTRICT JUDGE