# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**UNITED STATES OF AMERICA**,

*Plaintiff*,

v.

**MONROE L. HUGHES, III**,
*also known as Roe*,

*Defendant*.

CAUSE NO. 3:18-CR-67-CWR-LGI-2

## ORDER

Before the Court are Defendant Monroe L. Hughes, III's *Motion* in Limine *to Preclude Testimony that Would Violate the Confrontation Clause and the Rules Against Hearsay*, the Government's Response, Mr. Hughes' Reply, and co-Defendant Aubrey Maurice Jordan's Response to Mr. Hughes' Motion. Docket Nos. 372, 374, 428, and 377. The Court heard argument on the Motion at the January 5, 2024 pretrial conference. Upon review, the motion will be granted.

**I.     Background**

Mae Ford is the mother of Anton Ford, the victim in this matter. On March 24, 2018, Meridian Police Officers Tenesia Evans and Darreall Thompson interviewed Ms. Ford. *See* Docket No. 347, Ex. E. The interview was recorded. Officer Evans elicited statements from Ms. Ford concerning her understanding and knowledge of her son's shooting. The interview took place in the hospital room where Anton Ford was being treated for his injuries from the shooting. The officers interviewed Ms. Ford while her son lay next to her in his hospital bed.

During the 40-minute interview, Ms. Ford told Officers Evans and Thompson how she learned of the shooting, what she observed of her son's condition when she arrived at the hospital, his capacity to communicate, and her attempts at communicating with him. Beyond this, Ms. Ford recounted information that her family members and son allegedly shared with her in the aftermath of the shooting. She offered her theories of who shot her son, as well as what she purported to be her son's theories of the shooting. At various points, Ms. Ford mentioned co-Defendants Cortez Byrd and Monroe Hughes by name.

Mr. Hughes now asks the Court to exclude from trial the video recording of Ms. Ford's March 24 interview. Docket No. 372 at 3. He further asks the Court to preclude any testimony from Ms. Ford regarding third-party information she received about the shooting of Anton Ford. *Id.* Mr. Hughes argues that any such testimony would violate his rights under the Confrontation Clause and the Federal Rules of Evidence concerning hearsay.

Mr. Jordan sees it differently. While Mr. Jordan "understands the necessity and legal correctness of Defendant Hughes' motion in limine," he nevertheless argues that the entire video should come in under Rule 703. Mr. Jordan explains that the video of Ms. Ford recounting to police what she heard about the shooting of Anton Ford is necessary to lay a foundation for the testimony of Dr. Kovera—Mr. Jordan's expert on eyewitness identification. And so, he says, excluding the video will deprive Mr. Jordan "of his ability to present evidence critical to his defense." Docket No. 377 at 1. Mr. Jordan furthermore seeks to introduce aspects of Ms. Ford's March 24 interview for impeachment purposes. *Id.* at 2.

For its part, the Government explains that it does not intend to "elicit any testimony or present any portions of Ms. Ford's March 24 interview containing hearsay statements."

2

Docket No. 374 at 2. But the Government asserts that law enforcement officers can testify about the contents of the video to provide background information about their investigation. It further seeks to reserve the right to introduce any contested testimony or statements if they become necessary or relevant during trial. At the pretrial conference, the Government explained that it might seek to admit excerpts of the interview for rehabilitation or impeachment purposes, if necessary. It provided the Court and defense counsel with a copy of excerpted statements from the video.

In sum, Mr. Hughes wants to exclude the entire video. Mr. Jordan asks the Court to, at minimum, present the entire video to the jury even if the video is not admitted into evidence. And finally, the Government seeks to reserve the right to admit portions of the video.

**II.     Legal Standard**

> A motion in limine is a motion made prior to trial for the purpose of prohibiting opposing counsel from mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds.

*O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1306 n.1 (5th Cir. 1977) (internal citations omitted).

**III.    Discussion**

For the reasons that follow, the Court finds that the video of Mae Ford's March 24, 2018 interview constitutes hearsay not subject to an exception and is, thus, inadmissible.

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted in that statement. Fed. R. Evid. 801(c). The Federal Rules of Evidence preclude the admission of hearsay evidence at trial unless a federal statute, another Rule of Evidence, or the United

3

States Constitution provides otherwise. *Id.* at 802. There are several exceptions to the general rule against the admission of hearsay evidence. *See generally id.* at 803.

The video of Ms. Ford's March 24 interview is quintessential hearsay. It presents a series of out-of-court statements Ms. Ford made while at the hospital shortly after learning that her son was shot. Her statements concerning the shooting, alleged shooter, and alleged conspiracies were based on information relayed to her by family members who, like Ms. Ford, did not witness the shooting. Using the video to prove the truth of the events of the shooting, or the alleged drug conspiracy, constitutes inadmissible hearsay. As Mr. Hughes' counsel argued, it goes beyond simple hearsay. There are multiple layers of hearsay.

Mr. Jordan and the Government nevertheless argue that the video is admissible evidence with multiple relevancies: (1) to lay a foundation for an expert witness and (2) to provide background information for law enforcement's investigation. Mr. Jordan and the Government's arguments are addressed in turn.

  A. *Federal Rule of Evidence 703: Bases of an Expert's Opinion Testimony*

The video is not admissible under Federal Rule of Evidence 703.

An expert may base her opinion on facts that she personally observed or those on which she has been made aware. Fed. R. Evid. 703. If other experts in her field would "reasonably rely" on the same types of facts, "they need not be admissible for the opinion to be admitted." *Id.*; *see also Hoke v. Anderson*, No. 1:18-CV-232-RP, 2019 WL 2128631, at *3-*4 (W.D. Tex. May 15, 2019) (allowing the admission of a psychologist's reliance on non-prejudicial body camera footage as a basis for his expert opinion). When the facts an expert relies on are otherwise inadmissible, however, the expert may disclose those facts "only if

their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703.

Mr. Jordan's expert witness, Dr. Kovera, could reasonably base her expert opinion on her review of the March 24 video. Rule 703 allows her reliance upon inadmissible evidence. But the probative value of the video does not substantially outweigh the prejudicial effect of showing it to the jury.

At the pretrial conference, Mr. Hughes explained that, while the video recording is helpful to Mr. Jordan, it is incredibly prejudicial to Mr. Hughes and Mr. Byrd. The Court agrees.[1] Indeed, Ms. Ford mentions Mr. Byrd throughout the interview, implicating him in the conspiracy to shoot Anton Ford. She further implicates Mr. Hughes as participating in an alleged drug sale.

Because Ms. Ford's statements are based on information she allegedly learned from Anton Ford and other family members, they are hearsay and inadmissible as substantive evidence. There is a presumption against disclosing information to the jury that was used as the basis of an expert's opinion but is not admissible for any substantive purpose. *See* Fed. R. Evid. 703, Advisory Committee Notes (2000 Amendments). In fact, in 2000, the Advisory Committee amended Rule 703 "to emphasize that when an expert reasonably relies on inadmissible information to form an opinion [,] the underlying information is not admissible simply because the opinion [is] admitted." *Id.* The video is hearsay evidence, and its probative value does not substantially outweigh its prejudicial effect on Mr. Hughes and Mr. Byrd. Therefore, the Court will not admit the video as substantive evidence.

---

[1] And even Mr. Jordan "understands the necessity and legal correctness of Defendant Hughes' motion in limine" to exclude the video. Docket No. 377 at 1.

B.   *Law Enforcement's Testimony Regarding Background Information to its Investigation*

As for the second argument, the Court finds that eliciting testimony from law enforcement officers regarding the contents of Mae Ford's interview would violate Mr. Byrd's and Mr. Hughes' rights under the Confrontation Clause.

To determine whether the admission of evidence violates the Confrontation Clause, courts make three inquiries:

> *First*, did the evidence introduce a testimonial statement by a non-testifying witness? *Second*, was any such statement offered to prove the truth of the matter asserted? *Third*, was the non-testifying witness available to testify, or was the defendant deprived of an opportunity to cross-examine him? If the answer to each of those questions is "yes," the Confrontation Clause was violated.

*United States v. Hamann*, 33 F.4th 759, 767 (5th Cir. 2022).

A statement is testimonial if its primary purpose is to prove or establish past events that are potentially relevant to future prosecution. *Id.* Statements that "blatantly link[]" a defendant to an alleged crime are testimonial. *Id.* at 768. Likewise, "even if the government is correct that evidence is relevant to explain its investigative choices, we consider that evidence to be offered for the truth of the matters asserted if it 'specifically links a defendant to the crime.'" *Id.* at 770 (quoting *United States v. Jones*, 930 F.3d 366, 377 (5th Cir. 2019)).

Each element is satisfied here.

To start, the statements contained within the video are testimonial. At the outset of her interview, Ms. Ford recalled a conversation she and Anton Ford allegedly had sometime after he was shot. She informed law enforcement that Anton Ford told her that he knew

6

"Birdman[2] had a hit out on me" because someone had warned him "that Birdman and other people were saying [] that they know that [Anton Ford] was the one who set Birdman up." Docket No. 347, Ex. E at 4:54-6:14. At the end of the interview, the officers asked Ms. Ford whether she wanted to share additional information. Ms. Ford then told the officers that "the detective had my son [] go to Monroe's house to buy something from Monroe." *Id.* at 36:40-37:09. She then said Mr. Hughes "had some kind of feeling that [Birdman] was set up, so that's when they went and got Birdman [and] he got locked up." *Id.* at 36:50-37:18.

Next, Ms. Ford's statements "specifically link[]" Mr. Hughes and Mr. Byrd to conspiring to kill Anton Ford. They further link Mr. Hughes to an alleged drug sale. Because Ms. Ford's statements link both defendants to the charged offenses, admission of the video would be to prove the truth of the matter asserted. *See Hamann*, 33 F.4th at 669-70; *see also Jones*, 930 F.3d at 377 ("A witness's statement to police that the defendant is guilty of the crime charged is highly likely to influence the direction of a criminal investigation. But a police officer cannot repeat such out-of-court accusations at trial, even if helpful to explain why the defendant became a suspect[.]").

Lastly, the third element is satisfied. The defendants cannot cross-examine Anton Ford—the declarant—regarding the out-of-court statements he relayed to Ms. Ford because, to state the obvious, he is dead.[3]

---

[2] In *United States v. Hamann*, the Fifth Circuit explained that "[i]t does not matter that the declarant used the name 'Cali' instead of 'Hamann' because Stanley and the prosecutor eliminated all doubt about whom the informant referred to." 33 F.4th at 768 (citing *United States v. Jones*, 930 F.3d 366, 377 (5th Cir. 2019)). For that reason, "[t]he jury scarcely needed to infer anything." *Id.* (citing *United States v. Kizzee*, 877 F.3d 650, 658 (5th Cir. 2017)). Here, there is little doubt that "Birdman" is a nickname identifying Mr. Byrd. In fact, in a separate motion *in limine*, Docket No. 387, Mr. Byrd references a conversation between Curtis Tingle and Anton Ford where Mr. Tingle repeatedly referred to Mr. Byrd as "Birdman." *Id.* at 3.

[3] The Court reaffirms its prior ruling that Anton Ford's recorded statements to law enforcement are admissible under Rule 804(b)(6)—Forfeiture by Wrongdoing. *See* Docket No. 244. Anton Ford's

7

Taking heed of the Fifth Circuit's repeated admonishment against "the backdoor introduction of highly inculpatory statements," *Hamann*, 33 F.4th at 763 (cleaned up), the Court precludes the Government from using law enforcement to elicit testimony about Mae Ford's March 24, 2018 interview to provide background information about their investigation.

**IV.     Conclusion**

Mr. Hughes' Motion *in limine* is hereby **GRANTED**; the video recording of Mae Ford's March 24, 2018 interview is generally inadmissible at trial. Ms. Ford may testify live about the information she witnessed first-hand.

This Order does not preclude the parties from eliciting testimony concerning Ms. Ford's interview that are not violative of the Federal Rules of Evidence. The Court acknowledges that both the Government and Mr. Jordan seek to use the video for impeachment, identification, or rehabilitative purposes. At this juncture, it is premature to rule on the admissibility of the video for those purposes. As such, the parties may raise argument to that effect during trial.

**SO ORDERED**, this the 11th day of January, 2024.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE

---

statements are the best evidence of what he, the unavailable declarant, said—not Ms. Ford's statements about what Anton Ford allegedly told her. Statements Ms. Ford heard from Anton Ford, and repeated to officers, may mirror the statements Anton Ford made in his respective interviews. The Court worries that using the video of Ms. Ford, an available witness, for anything more than the most narrow uses, risks inviting error.